1  J. Owen Murrin, State Bar No: 75329
   office address: 7045 Los Santos Dr.
2  Long Beach, California.
   Mailing address:  2682 270th St.
3  Madison, MN 56256
   (562) 342-3011
4  Fax: 562-683-2119
5  Email: jmurrin@murrinlawfirm.com

6  Attorney for Plaintiffs

7          UNITED STATES DISTRICT COURT
8          CENTRAL DISTRICT OF CALIFORNIA

9
   JOHN O. MURRIN, individually and as    Case No.
10 the sole member of RAINIER SDP 16,      CV14-00234 PSG (JEM)
   LLC, and DEVONNA MURRIN,
11 individually and as the sole member of
12 RAINIER SDP 29, LLC                     PLAINTIFFS' ORIGINAL
                                           COMPLAINT
13                                         AND DEMAND FOR TRIAL
                Plaintiffs,
14    -vs-
15
16 RAINIER PROPERTIES, L.P.
   RAINIER PROPERTY
17 MANAGEMENT, G.P., LLC,
18 RAINIER PROPERTY
   MANAGEMENT, L.P., RAINIER
19 CAPITAL MANAGEMENT, LLC,
20 RAINIER SDP ACQUISITIONS, LLC,
   RAINIER ASSET MANAGEMENT
21 COMPANY LLC, JOHN PETEREIT,
22 LAWRENCE FRIEDMAN,
   FRIEDMAN AND FIEGLER, L.P.,
23 TIMOTHY C. NICHOLS, J.
24 KENNETH DUNN,  RICHARD J.
   COLE, JR., THOMAS MOCK,
25
26              Defendants
27

28

                        -1-

Complaint

TO THE HOMORABLE JUDGE OF THE COURT:

NOW COME John O. Murrin, individually and as the sole member of Rainier SDP 16, LLC and DeVonna Murrin, individually, and as the sole member of Rainier SDP 29, LLC, Plaintiffs in the above styled action and file this Original Complaint against RAINIER PROPERTIES, L.P., 13760 Noel Rd., Suite 800, Dallas, TX, RAINIER PROPERTY MANAGEMENT, G.P., LLC, AARON PROPERTY MANAGEMENT, L.P., AARON CAPITAL MANAGEMENT, LLC, RAINIER SDP ACQUISITIONS, LLC, RAINIER ASSET MANAGEMENT COMPANY LLC JOHN PETEREIT, LAWRENCE FRIEDMAN, FRIEDMAN AND FIEGLER, TIMOTHY C. NICHOLS, J. KENNETH DUNN, RICHARD J. COLE, JR., THOMAS MOCK, Defendants, and for cause of action would respectfully states as follows:

## I. JURISDICTION AND VENUE; AND THE PARTIES

1.      Jurisdiction of this Court is invoked pursuant to 28 U S Code §§ 1331 and 1332 based upon both Federal question and diversity. The Plaintiffs are citizens of a state different than all of the Defendants, and the amount in controversy exceeds $75,000.

2.      Venue is proper in this district pursuant to 28 U S C. § 1391, because a substantial part of the events or omission on which the claim is bases occurred in this district.

Complaint

3.      Plaintiffs, John O. Murrin and DeVonna Murrin are investors, citizens of California with their residence of the City of Long Beach, County of Los Angeles, State of California.

## II. **THE PARTIES**

4.      Rainier SDP 16, LLC, and Rainier SDP 29, LLC, have their principal place of business in the City of Long Beach, California and as such are citizens of California. As part of the investment, Rainier Defendants formed limited liability companies for the Plaintiffs, called Rainier SDP 16, LLC and Rainier SDP 29, LLC.

5.      Defendant, RAINIER PROPERTIES, L.P., is believed to be a Texas Limited Partnership, or is registered to do business in the State of Texas and is a brokerage and/or property management arm of the Rainier companies and is a citizen of Texas with its main office in Texas.  It may be served with citation by serving it at 13760 Noel Rd., Suite 800, Dallas, TX 75240.   This company was a sponsor or promoter of a an investment entitled Special Data Processing, Inc., an office building located in Clearwater, Florida, hereinafter referred to as "SDP Investment".  It is affiliated with the other Rainier Defendants and performs much the same functions.  This entity is hereinafter sometimes referred to as "seller" and collectively referred to as "Defendants" or "sellers".

-3-

Complaint

6.     Defendant, RAINIER PROPERTY MANAGEMENT, G.P., LLC, is believed to be a Texas Limited Liability Company and is a citizen of Texas, whose general partner is Rainier Properties, L.P who is also believed to be a citizen of Texas with its main office in Texas.  It may be served with citation by serving it at 13760 Noel Rd., Suite 800, Dallas, TX 75240.  It is affiliated with the other Rainier Defendants and performs much the same functions. This entity is hereinafter sometimes referred to as "seller" and collectively with the other Defendants, "sellers".

7.     RAINIER PROPERTY MANAGEMENT, L.P., is believed to be a Texas Limited Partnership, or is registered to do business in the State of Texas and is the brokerage and property management arm of the Rainier companies and is a citizen of Texas with its main office in Texas.  It may be served with citation by serving it at 13760 Noel Rd., Suite 800, Dallas, TX 75240.  This company was a sponsor or promoter of a an investment entitled Special Data Processing, Inc., an office building located in Clearwater, Florida, hereinafter referred to as "SDP Investment". It is affiliated with the other Rainier Defendants and performs much the same functions.  This entity is hereinafter sometimes referred to as "seller" and collectively referred to as "Defendants" or "sellers".

8.     RAINIER CAPITAL MANAGEMENT, LLC, is believed to be a Texas Limited Liability Company, or is registered to do business in the State of

-4-

Complaint

Texas and is the brokerage and property management arm of the Rainier companies and is a citizen of Texas with its main office in Texas. It may be served with citation by serving it at 13760 Noel Rd., Suite 800, Dallas, TX 75240. This company was a sponsor or promoter of a an investment entitled Special Data Processing, Inc., an office building located in Clearwater, Florida, hereinafter referred to as "SDP Investment". It is affiliated with the other Rainier Defendants and performs much the same functions. This entity is hereinafter sometimes referred to as "seller" and collectively referred to as "Defendants" or "sellers".

9.    RAINIER ASSET MANAGEMENT COMPANY LLC, is believed to be a Texas Limited Liability Company, or is registered to do business in the State of Texas and is the brokerage and property management arm of the Rainier companies and is a citizen of Texas with its main office in Texas. It may be served with citation by serving it at 13760 Noel Rd., Suite 800, Dallas, TX 75240. This company was a sponsor or promoter of an investment entitled Special Data Processing, Inc., an office building located in Clearwater, Florida, hereinafter referred to as "SDP Investment".  It is affiliated with the other Rainier Defendants and performs much the same functions. This entity is hereinafter sometimes referred to as "seller" and collectively referred to as "Defendants" or "sellers".

10.    RAINIER SDP ACQUISITIONS, LLC, is believed to be a Texas Limited Partnership, or is registered to do business in the State of Texas and is the

Complaint

brokerage and property management arm of the Rainier companies and is a citizen

of Texas with its main office in Texas.  It may be served with citation by serving it

at 13760 Noel Rd., Suite 800, Dallas, TX 75240.   This company was a sponsor or

promoter of a an investment entitled Special Data Processing, Inc., an office

building located in Clearwater, Florida, hereinafter referred to as "SDP

Investment".  It is affiliated with the other Rainier Defendants and performs much

the same functions.  This entity is hereinafter sometimes referred to as "seller" and

collectively referred to as "Defendants" or "sellers".

11.    JOHN PETEREIT, is a citizen of Texas, was an attorney hired by the

Rainier Defendants to represent Plaintiffs and the other investors. He works for

Friedman and Fiegler, L.P. and is referred to herein as the "Friedman Defendants".

Service may be effected with citation by serving it at 5301 Spring Valley Road,

Suite 200, Dallas, TX 75254.

12.    LAWRENCE FRIEDMAN, is a citizen of Texas, was an attorney

hired by the Rainier Defendants to represent Plaintiffs and the other investors. He

works for Friedman and Fiegler, L.P. and is referred to herein as the "Friedman

Defendants".  Service may be effected with citation by serving it at 5301 Spring

Valley Road, Suite 200, Dallas, TX 75254.

13.    FRIEDMAN AND FIEGLER, L.P., is a citizen of Texas, with its

main office in Texas is believed to be a law firm registered to do business in the

Complaint

State of Texas as a limited partnership. This entity is hereinafter referred to as the "Friedman Defendants" sometimes referred to as "seller" and collectively with the other Defendants, "sellers". Service may be effected with citation by serving it at 5301 Spring Valley Road, Suite 200, Dallas, TX 75254.

14.    TIMOTHY J. NICHOLS, is a citizen of Texas, is believed to be a resident of the City of Dallas, County of Dallas, State of Texas and may be served at 13760 Noel Rd., Suite 800, Dallas, TX 75240. He is a controller and a seller of the investment and under Securities' Law is liable for securities and other violations. He is hereinafter sometimes referred to as a "seller" and collectively with the other Defendants, "sellers" or "Rainier Defendants".

15.    J. KENNETH DUNN, is a citizen of Texas, is believed to be a resident of City of Dallas, County of Dallas, State of Texas and may be served at 13760 Noel Rd., Suite 800, Dallas, TX 75240. He is a controller and a seller of the investment and under Securities' Law is liable for securities and other violations. He is hereinafter sometimes referred to as a "seller" and collectively with the other Defendants, "sellers" or "Rainier Defendants".

16.    RICHARD J. COLE, JR., is a citizen of Texas, is believed to be a resident of City of Dallas, County of Dallas, State of Texas and may be served at 13760 Noel Rd., Suite 800, Dallas, TX 75240. He is a controller and a seller of the investment and under Securities' Law is liable for securities and other

-7-

violations. He is hereinafter sometimes referred to as a "seller" and collectively with the other Defendants, "sellers" or "Rainier Defendants".

17.     THOMAS MOCK, and is a citizen of Texas, is believed to be a resident of City of Dallas, County of Dallas, State of Texas and may be served at 13760 Noel Rd., Suite 800, Dallas, TX 75240. He is a controller and a seller of the investment and under Securities' Law is liable for securities and other violations. He is hereinafter sometimes referred to as a "seller" and collectively with the other Defendants, "sellers" or "Rainier Defendants".

18.     The District Courts of Dallas County, Texas have jurisdiction over this case. The amount in controversy exceeds the minimal jurisdictional limits of this Court, and the exercise of this Court's jurisdiction over the Defendants is proper.

19.     Venue is appropriate in the District Courts of Dallas County, Texas, pursuant to Texas Civil Practices & Remedies Code §15.001(a)(1) and §15.001(a)(1), (2), and (3) in as much as a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas and one or more Defendants have their business offices and/or residences in Dallas County, Texas.

Complaint

## III. BACKGROUND FACTS

20.     In October, 2005, Defendants arranged to acquire land and dwellings known as the SDP property which was sold to various investors of which included Plaintiffs, John Murrin and DeVonna Murrin.  They, along with other investors purchased this property through Defendants' syndication as a Tenants-in-Common ("TIC") for approximately for $24,610,000.00.  Plaintiff John Murrin's share of that investment was 1.5% and DeVonna Murrin's share of that investment was 1.5%, for a total between them of 3% purchased with a total investment of $816,300 of which $280,500.00. was  equity and $535,800 was debt acquired on the property.

21.     The investment is hereinafter called the "SDP investment" and consisted of property known as the "SDP Property".

22.     This property was previously operated by a company called SDP, thus its name.  Its previous owner, William Hood (or his family trust) was SDP's CEO. He owned the building and sold the SDP property to Plaintiffs and other similarly situated investors.  At the time of purchase, SDP committed to long term leases of 15 years.  The property was a 199,000 sq. feet office building in Clearwater, Florida.  It included a 1.96 acre parcel for parking.

23.     One of the reasons why people were interested in this investment was because it was to be professionally managed by Rainier or one of its entities.  This

-9-

meant the owners/investors could be passive investors and have the peace of mind

that comes with having property professionally managed. In fact the very

structure of the investment precludes or prohibits active management by the

passive investors.

24.    Defendant Rainier Properties LP, an affiliate of Defendant Rainier

Capital Management, L.P., of Dallas, Texas took charge of the management of the

property. It, in association with other Rainier Defendants, were sponsors and

promoters of the SDP property investment and sellers of the property to Plaintiffs

in corroboration with various broker/dealer agents of theirs.

25.    As part of the sale of the property, the sellers of SDP should have

known that SDP was in the newspaper or periodical business which business was

being eroded by the internet. People were not reading newspapers and magazines

as much and its business was marketing through newspapers and periodicals.

26.    Plaintiffs were sold this investment based upon Defendants'

recommendation that this was a safe and secure investment and one that had cash

flow from long term leases from SDP, which was represented as a safe, solid, and

an enduring company capable of supporting this investment through the term of its

lease.

27.    SDP was wholly owned by a subsidiary of Willis Stein & Partners aka

Willis Stein & Partners I or Willis Stein & Partners II, a Chicago private equity

-10-

firm.  Willis Stein & Partners should have been required by Defendants to sign the lease, but were not.

28.      Without obtaining the signature of SDP's parent company, Defendants should not have offered this investment to Plaintiffs as a safe investment.  It is because of this failure that Plaintiffs and other investors suffered losses.

29.      Defendants sold this investment to Plaintiffs based in part upon the financial strength of Willis Stein or it was a factor noted in sales literature, yet it failed to obtain its signature behind the lease.

30.      This investment was sold to Plaintiffs and the other investors on the basis that Defendants, including Rainier Properties, or its affiliates, as sellers, promoters, and sponsors, would manage and operate the investment as a turnkey operation.

31.      In 2007, after Plaintiffs purchased the property, SDP contacted Rainier Properties, L.P. and or its affiliates and or defendants to reduce its rent obligations, or rid itself of the lease obligations.

32.      Rainier Properties, L.P. and or its affiliates and or defendants and SDP were unable to renegotiate the lease.

33.      In 2008 a plan was devised by persons associated with SDP to feign insolvency to allow SDP to be relieved of the lease in such a way as to allow its assets to secretly pass to insiders without liabilities.  Its parent company was part

Complaint

of this and/or a successor in interest or joint venturer, called Blackstreet,

implemented by an individual named Thomas H. Ripley.  SDP, without adequate

consideration and to avoid the lease obligation, namely the payments, created or

used another company to obtain the assets, not the liabilities of SDP. This

company included or used these names:  ACCC Acquisitions, LLC, Agora

Holdings, SDP Acquisitions, LLC,  ACCC Inc., Agora Marketing Solutions, aka

Agora and hereinafter collectively referred to as "Agora."   The method and

manner this occurred is described in more detail in a document Rainier Properties,

L.P. and or its affiliates and or defendants sent to Plaintiffs.  This document is

labeled Exhibit 12 and is attached hereto and incorporated by reference as though

fully set forth hereat.   Further supporting documents on how this was done is set

forth in Exhibits 14 and 16.

34.    SDP became Agora, and for a while, Agora paid rent on the SDP

lease, and conducted business in the SDP Building while paying the rent under the

lease.  Without notice, Agora vacated the building in February 2009 and

moved to another location in Florida pursuant to a lease agreement at a

comparatively reduced lease rate that Ripley and other Blackstreet principals

worked out unbeknownst to Plaintiffs.

35.    Following the sudden vacancy a broker selected by Rainier

Properties, L.P. and or  its affiliates and or defendants, spent months trying to

-12-

Complaint

lease out the building so that mortgage payments and operating costs could be covered. Despite these efforts to mitigate, no tenant could be secured. With the rent lost, and the inability to find a tenant, the mortgage payments could not be made and so the property went into foreclosure.

36.    Proper due diligence would have or should have caused the Rainier Defendants to know that SDP had borrowed $20,000,000 from Wells Fargo under a blanket security agreement.

37.    That this loan should have been a red flag that a reasonable, competent, capable promoter and sponsor of an investment would have considered as a significant event that should have been disclosed to the investors, or have been grounds to recommend against the investment. However, that loan became the basis upon which the parent company or its successor attempt to take over the assets of SDP without assuming the obligation of its liabilities.

38.    Plaintiffs' only remedy was to sue the culprits above noted who illegally and fraudulently transferred SDP over to Agora or their newly created companies.  Therefore, on or about late 2008-2009, Rainier Properties, L.P. hired lawyers and a law firm to represent Plaintiffs. The firm's name was Friedman & Feiger, L.P. The lawyers representing the investors were John Petereit and Lawrence Friedman. Rainier Properties, L.P. and or its affiliates and

-13-

or defendants advised this action be taken and they selected the firm, supervised the lawsuit for the investors in their same capacity and in conjunction with other Rainier Defendants who sponsored and sold this investment to Plaintiffs. As such, they continued to raise capital to fund the legal action.  Plaintiffs with other investors contributed about $150,000 to fund these legal services.

39.     During this period, Rainier Properties, L.P. and or its affiliates and or defendants were communicating with the lender for Plaintiffs. They acted as spokesmen for Plaintiffs in dealing with the foreclosure of the property. In October of 2009 at about the same time Plaintiffs were sued for foreclosure, Exhibit 13, the Friedman & Feiger Law Firm files the complaint against the culprits for the loss of revenue from the leases. Exhibit 14.

40.     The Rainier Defendants in conjunction with the Friedman Defendants (the lawyers) were handling the above matters for Plaintiffs and the other investors.  Defendants allowed Plaintiffs' claims for damages against the culprits to be absorbed in the foreclosure and lost to the lender as part of the foreclosure.

41.     In the alternative, if it was not lost, the Rainier Defendants wrongfully took the position that the claim for damages was lost. The above is exemplified an admission by Rainier Properties, L.P. in a letter to investors dated May 16, 2011, attached as Exhibit 15.  It says:

-14-

... we have reached a formal settlement with the Lender.... Enclosed is a copy of the Assignment of Claims and Causes of Actions which memorializes the agreement with the Lender. Please note that the settlement is incorporated within an assignment agreement because, after review and analysis of the loan documents and the foreclosure proceedings, it was obvious that the Lender had acquired the Co-Owners' rights in the lawsuit as a result of the foreclosure in November of 2010.

42.    The loss of any of these rights or the treatment of these rights as lost did not have to occur, and would not have happened, but for wrongdoing on the part of Defendants. Rainier Properties or the lawyers wrongfully accepted the loss of rights in the lawsuit or lost or allowed them to be lost. As a result of the above, the Defendants were remiss in not adequately and properly advocating, and or litigating the investor's right to maintain them.

43.    It is also alleged, in the alternative, that it was deceptive or erroneous to suggest the rights were lost. Plaintiffs and the investors reasonably relied upon the statements made by Defendants and the conduct of Defendants to protect them in dealing with the law firm, including handling and resolving the tenant, foreclosure and lawsuit for recovery against the culprits. It assumed responsibility for managing the litigation arising out of these situations and the investment.

44.    As a result of the above-mentioned actions and the situation where the lender came to own Plaintiffs' right of recovery, (or it was thought lost to the lender), Plaintiffs were forced to enter into an agreement with the lender to split

-15-

Complaint

their recovery and finance the entire lawsuit without any contribution from the lender for legal fees.

45.    By reason of the above, Rainier Properties LP and the Friedman Defendants became fiduciaries to the Plaintiffs and the other investors.

46.    The Rainer Defendants and the Friedman Defendants were negligent in not appearing in the foreclosure action to prevent the loss of their right of recovery or to clarify it. They did not properly participate in the foreclosure and **allowed it to go forward upon default,** as it was managed or manipulated by the lender's counsel to the detriment of the Plaintiffs and the other investors.

47.    Plaintiffs did not agree to give up their right of recovery when they agreed to cooperate in the foreclosure. Defendants should not have allowed the foreclosure or terms that would allowed the lender to take over or be able to claim it took over Plaintiffs' right to recovery.

48.    In obtaining Plaintiffs permission to allow the foreclosure by default, the Rainier Defendants failed to advise the investors that a default foreclosure could jeopardize their right of recovery. It was negligent for Rainier Properties LP and/or the affiliated Rainier Defendants and/or the Friedman Defendants to fail to appreciate the opportunity to the right of recovery that the foreclosure presented. They were also negligent in allowing the foreclosure to go through by default.

-16-

Complaint

49.     Because the foreclosure process was improperly handled by the Defendants or improperly disclosed to Plaintiffs and the other investors, Plaintiffs lost the rights to be able to procure  damages against the culprits.  (See Exhibit 3).

50.     Had the foreclosure been handled properly, the loss of the right to damages could have been avoided.  In the alternative, had full disclosure of this fact been given, Plaintiffs and the other investors could have contested the foreclosure on a basis that would have given the lender the property , but not the right to recovery.

51.     In the alternative, it is alleged that Defendants led Plaintiffs down a path of concealment and deception that caused the investors to give up their rights of recovery.  Defendants did not reveal the truth of what was an ulterior motive or and conflict of interest that caused it to favor the lender over Plaintiffs.

52.     Also, Defendants failed to advise Plaintiffs of a valid claim they had against the lender and failed to pursue it and, in fact, waived and lost it by allowing and cooperating in a default foreclosure. The default foreclosure relieved the lender of liability as an accomplice and seller of securities.  Further, Defendants failed to appreciate and present its claims against the lender for failure of title, lack of authority, and wrongful foreclosure.

53.     The lender and the Defendants were further negligent in handling settlement with Plaintiffs without properly representing their interests, but

-17-

Complaint

basically giving away the right of recovery to the lender. This was highly improper and would not have been necessary had proper monitoring, control, oversight, and supervision of this matter.

54.     For the above reasons, the stipulation executed by Plaintiffs and the other investors for allowing entry of foreclosure judgment was not based on informed consent because it did not state that the lender was being given Plaintiffs' right to recovery.

55.     Without considering the above or advising Plaintiffs of the above, Defendants convinced Plaintiffs and the other investors to sign a Stipulation to allow foreclosure just to avoid the cost of maintaining the building and the liability associated with that. That was really their obligation. It benefited them as they stood to remain liable. This situation pitted the Rainier Defendants against Plaintiffs. This was a conflict of interest which required Defendants to advise Plaintiffs to seek separate counsel. At this point, by proceeding to represent the investors, the Friedman Defendants were representing both parties with conflicting interests. It protected the Rainier Defendants to be relieved of building management. The investors were no-recourse obligees. No disclosures were made by Defendants to Plaintiffs.

56.     An email dated June 10, 2010 from Rainier employee, Kristin Schlinkert, as agent, including for Rainier Capital Management, L.P., explaining

-18-

the purpose of the foreclosure is attached hereto an labeled Exhibit 1. This goes to show Rainier Capital Management's involvement.

57.    Exhibit 2 is another email form Kristin Schlinkert dated June 22, 2011, supporting the fact that the Plaintiffs and the other investors were not told that the lender had acquired rights in the lawsuit as a result of the foreclosure.

58.    In approximately the spring of 2010, Rainier orchestrated a campaign to have investors to cooperate with the lender to allow the foreclosure to proceed upon a default basis for reasons set forth in Exhibit 4.

59.    That Defendants never informed Plaintiffs and the other investors that the lender was going to be given rights to the investors' recovery or that the lender would be relieved of liability as part of the foreclosure.

60.    After the foreclosure, the lender claimed to be the owner of all of Plaintiffs' rights relating to its rights of recovery.

61.    Had Defendants insisted that the foreclosure proceed only on the basis of the return of property, that would have been accomplished. Giving up of the rights to future lawsuits, damages and settlements was never discussed ahead of time and was inserted at the last minute or in a manner wholly without the authority or knowledge of Plaintiffs and the other investors.

Complaint

  
62.     That Defendants gave rights to the lender that should never have been given to lenders or Defendants represented that these rights were transferred when they were not.

63.     As a result, Plaintiffs and the other investors had no choice but to cooperate with the lender as they lost the rights to their own lawsuit.

64.     Allowing this to happen was negligent, a breach of fiduciary duty, and/or concealment or deception on the part of Defendants.

65.     That prior to securing a foreclosure agreement with the lender, Thomas Mock, the attorney for Rainier, did not advise the investors that his allegiance was to Rainier, not the investors.  This created a conflict of interest and constituted a lack of full disclosure and betrayal.

66.     At all times herein, it was the belief of the investors that Thomas Mock was retained by Rainier to represent the investors in a lawsuit against the tenant of the property that is the subject matter of this lawsuit.

67.     That instead, the interests of the Rainier Defendants and Thomas Mock clashed with that of the investors.

68.     That at one point, the investors were assured that the lender was not going to take any legal action, but were going to allow the investors to bring their own legal action.

-20-

Complaint

69.    That because Plaintiff was involved in an involuntary bankruptcy proceeding that commenced on approximately November 19, 2009, the statute of limitation on all actions was tolled until the Plaintiffs were no longer under the control of the Bankruptcy Court. Plaintiffs'' bankruptcies have now been dismissed and this action may now proceed.

70.    In addition, the last payment received by the investors was January 2013, so until said time, the Statute of Limitations time period had not accrued.

71.    Had Plaintiffs and the other investors known the truth, they would not have agreed to proceed with the foreclosure.

72.    That the Rainier Defendants, Nichols, Dunn, and Cole, failed to properly represent the true status of the investment, and their relationship with the lender, their motives and interest to favor a quick foreclosure. They failed to advise and obtain the consent of the investors on the material items described throughout this Petition.

73.    There was discussion about giving the lender an interest in the SDP lawsuit, but securing the lender with the Plaintiffs/investors cause of action against SDP lawsuit was improper and contrary to the best interests of the investors and without proper consent of the Plaintiffs and the other investors.

74.    John Petereit and Lawrence Friedman, under the auspices of Friedman and Fiegler, represented the interests of the investors in the foreclosure process.

-21-

75.     Without the consent and approval of the investors, John Petereit and Lawrence Friedman and Friedman and Fiegler fashioned a settlement with the lender that gave the lender an interest in the recovery against SDP without the authority and consent of the investors, including Plaintiffs.  See letter of September 20, 2010, Exhibit 17, which was an ultimatum that caused the settlement to be ram rodded through to serve the interest of the Rainier Defendants and not the investors.

76.     That the investors were not in favor of sharing their recovery with the lender and never ratified the settlement.  Nonetheless, this became the basis of the foreclosure and language supporting it was allowed to occur.

77.     Had Friedman, Petereit and Friedman and Fiegler been representing the interests of the investors, including Plaintiffs, they should not have allowed this to happen and should have insisted in separating the SDP lawsuit from the foreclosure or explain to the investors how they tied together.

78.     That Mock and the Rainier Defendants also had a duty to separate the SDP lawsuit from the foreclosure or explain to the investors how they tied together.

79.     That the foreclosure through default became part of the culture of the litigation that could not be shaken.

-22-

Complaint

80.     The truth of the matter is that the settlement benefited the Rainier Defendants to the detriment of the investors.

81.     That as a result of the actions of the Defendants, the Plaintiffs and the other investors lost the right of recovery and had to bargain back to get half of it, under circumstances that were not proper, fair, consented to or authorized by the Plaintiffs/investors.

## COUNT I: BREACH OF FIDUCIARY DUTIES
## THOMAS MOCK

82.     Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

83.     Thomas Mock masqueraded as a person to represent Plaintiffs and through the time of default, but was in fact an equity interest holder or attorney for the Rainier Defendants which created a conflict of interest.  It was not until after the foreclosure and the recommendation of default and foreclosure default occurred that he revealed this conflict.  It was too late and illegal to disclose and obtain waivers after the fact.

84.     As a result, up through the foreclosure, Thomas Mock purported to and owed allegiance to the investors, when his real allegiance was to Rainier Defendants and himself.

Complaint

85.    He had a duty to conduct himself in such a manner that they put the interests of the investors ahead of Rainier Defendants and his own or reveal his real interest.

86.    That Thomas Mock, specifically, had a duty under the rules of professional responsibility governing attorneys to represent his clients zealously and to give them his total allegiances under acting as a lawyer for Plaintiffs and investors, which he did not.

87.    While purporting to do this, he was in fact giving his allegiance to the Rainier Defendants, which had reason to cooperate with the lender to default out the investors when it was not in Plaintiffs; or the investors' best interests.

88.    That Mock worked with the lender to provide documents to the investors that were agreeable to the Rainer Defendants and lender, but detrimental to the investors.

89.    As a result of the above, Plaintiffs and the investors lost an opportunity to safeguard their right to recovery.

90.    All the terms and conflicts should have been communicated to Plaintiffs and the investors and their consent obtained before it was urged by Mock and the Rainier Defendants to go ahead and cooperate on a stipulated foreclosure.

-24-

Complaint

91.     In the alternative, Mock was remiss not to seize the opportunity to preserve the investors' right of recovery.

92.     For some reason, the issue of the lender sharing in the lawsuit and being relieved of liability or becoming the sole owner of the investors' damage lawsuit was not discussed as a possibility that would occur with the investors cooperating in a stipulated recovery.

93.     At all times therein, the way Mock and the Defendants negotiated on behalf of the investors, it was their duty to advise the investors of all events and to obtain their consent on all of it, which they did not do.

94.     That all times therein, Defendant Mock had a duty to protect the interests of the investors, which he failed to do.

95.     It is in the public interest to prevent an attorney like Thomas Mock from acting for the investors in the manner he did and is further in the public interest to allow suit against him to protect the rights of the investors and the public as a whole.

96.     That an attorney acting on behalf of a party must be held responsible to those they purport to represent.

97.     It was foreseeable that legal services would be rendered for the benefit of the investors and that negligently rendered services would cause harm to the investors.

-25-

98.     It is in the public interest and proper public policy for Thomas Mock to have a duty to the investors, who were under the belief that he was retained to represent their interests to preserve the maximum right of recovery possible.

99.     It is not an undue hardship to impose such a duty and liability on the attorney (in this case, Thomas Mock) acting for the investors/beneficiaries.

100.     Defendant Mock had a duty not to do harm to the investors. He failed in this regard.

101.     Defendant Mock had a duty not to represent the interests of those who stood to profit from the lawsuit at the expense of the investors. He failed in this regard.

102.     That Defendant Mock held himself out as having particular skills and expertise or specialization such that he should be held to a higher standard than just a general practitioner.

103.     That the actions described herein involve a breach of duties of due care or breach of fiduciary duty on the part of Defendant Mock.

104.     In the alternative, it is alleged that Mock purposely facilitated the transfer of rights of the investors to the lender to benefit Mock and/or the Rainier Defendants in their hidden agenda to get out of the management and other responsibilities that would have been on the Rainier Defendants.

-26-

Complaint

105.     Additional harm was committed in follow-up activities of Defendant Mock in attempting to co-opt the investors to go along with a subsequent contract to share recovery with the lender which would not have been necessary had he performed his function properly and not engaged in the conduct above described.

106.     By reason of the above-mentioned conduct of Defendants Rainier and Mock, Plaintiffs were damaged in the loss of not obtaining the full amount of their recovery.

107.     The Plaintiffs seeks all damages allowed by law, including interest and attorneys fees and the full value of what the recovery should have been.

## COUNT II: NEGLIGENCE
## THOMAS MOCK

108.     Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

109.     Thomas Mock had a duty to use reasonable care to protect the above mentioned right of recovery of the investors. He stepped into this position voluntarily.  He did not render competent and reasonable legal services for reasons above described.

110.     That as a result, Defendant Mock encouraged investors to sign a stipulation that gave up rights to their causes of action for damages to the lender.

111.     That Mock failed to use reasonable care in representing the investors through the foreclosure and obtaining a stipulation without advising the investors

-27-

Complaint

of the consequences of giving up their rights to their causes of action and damages. He further engaged in a cover up by persuading investors to sign a joint venture agreement with Rainier Defendants as set forth in Exhibit 11. This agreement was not a waiver, but a deceptive act to protect the Rainier Defendants. Further, it was not signed by Plaintiffs.

112.    By reason of the above breaches of duty, Plaintiffs have been injured in the less the full value of the recovery and the right to full settlement he was entitled to.

113.    By reason of the above mentioned conduct, and the actions described above, Defendant, Thomas Mock, failed to exhibit that degree of care, experience, prudence, diligence, and skill that a reasonable or reputable attorney would demonstrate and exercise under the circumstances to Plaintiffs and was therefore negligent.

114.    Defendant's efforts described herein and described above were below the standard of care of what should have been exhibited by a reputable attorney acting as a representative of the investors under the circumstances. He held himself out to have the experience and specialization at a high level and higher than a general practitioner to Plaintiffs.

Complaint

115.     Defendant Mock was negligent and careless and engaged in acts and omissions alleged in this case constituting professional malpractice, including gross negligence.

116.     That the Defendant's conduct was negligent as alleged throughout this Petition.

117.     It is a direct and proximate cause of injury to Plaintiffs, causing them to suffer economic damage and other financial loss, including the loss of their right of recovery which was given to the lender, but should have been secured for the investors.

118.     The above-mentioned conduct of Defendant has been the direct or proximate cause of injury and damage to Plaintiffs, which includes the loss of the full value of the recovery plus interest and attorneys' fees.

119.     By reason of the above-mentioned conduct of Defendant, Plaintiffs seeks all damages allowed by law, the loss of the full value of their recovery, interest therein, including attorney's fees and costs and disgorgement of fees Mock billed for his representation of the investors in the lawsuit.

## COUNT III:  BREACH OF FIDUCIARY DUTY
## JOHN PETEREIT, LAWRENCE FRIEDMAN AND
## FRIEDMAN AND FIEGLER, L.P.

120.     Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

-29-

Complaint

121.   John Petereit, Lawrence Friedman and Friedman and Fiegler, L.P. (hereinafter referred to as the Friedman Defendants) undertook to represent Plaintiffs and the other investors in an action to obtain their right of recovery as above alleged, but took their orders from the Rainier Defendants and protected Rainier's interest against that of the Plaintiffs/investors.

122.   That the Friedman Defendants failed to protect the Plaintiffs/investors rights to recovery in the foreclosure process and in properly investigating the rights Plaintiffs had in those proceedings and, in fact, allowed Rainier to obtain an advantage over the Plaintiffs as above alleged.

123.   That Rainier was allowed to be relieved of its management responsibilities associated with the property, but the Plaintiffs were not provided with their full benefits in the rights to recovery against SDP.

124.   It is alleged that the Friedman Defendants allegiance was exclusively to the Rainier Defendants, not the Plaintiffs/investors.

125.   As a result, the Friedman Defendants breached their fiduciary duties to the Plaintiffs/investors.

126.   That at no time did the Friedman Defendants advise Plaintiffs that they had a conflict of interest in representing them as well as representing the Rainier Defendants.

Complaint

127.    That the Friedman Defendants never obtained the consent of the

Plaintiffs/investors or permission to proceed to represent both parties.

128.    Throughout their representation of the Plaintiffs, they pretended to

have allegiance to the Plaintiffs/investors when their primary allegiance was to the

Rainier Defendants.

129.    That the Friedman Defendants had a duty to conduct themselves in

such a manner as to put the interests of the investors ahead of their own or, in the

alternative, reveal their true interests and seek consent of the Plaintiffs and the

other investors.

130.    The Friedman Defendants had a duty to the Plaintiffs and the other

investors to disclose their conflict of interest, which they did not.

131.    In the alternative, the Friedman Defendants were remiss in not seizing

the opportunity to seize and maintain and protect the investors' rights of recovery

through the foreclosure process or to advise the investors to obtain separate

counsel to protect them.

132.    That the Friedman Defendants allowed the lender to obtain the right

of recovery against SDP which should have been exclusively the right of the

Plaintiffs/investors.

133.    As a result of the actions of the Friedman Defendants, the

Plaintiffs/investors lost the opportunity to safeguard their right of recovery.  The

-31-

Complaint

entire recovery went to the bank and the Plaintiffs and other investors had no choice but to take whatever was offered them, which was that set forth in Exhibit 11.

134.   The lender obtaining the right of recovery through the foreclosure process was never discussed with Plaintiffs nor their consent obtained.

135.   All of the above is a breach of fiduciary duty or a violation of the duty of due care.

136.   It is in the public interest to prevent attorneys like the Friedman Defendants from acting against the interests of investors in the manner described above.

137.   It is further in the public interest to allow suit against attorneys to protect the right of investors and the public as a whole.

138.   An attorney acting on behalf of a party must be held responsible to those he purports to represent.

139.   It was foreseeable that legal services would be rendered for the investors and it was foreseeable that attorneys representing the Plaintiffs/investors would be confronted with a potential conflict with the sponsor of the investment and the Friedman Defendants needed to steer away from that conflict and maintain their allegiance to the investors or advise them of the limits of their representation. None of this was done.

-32-

Complaint

140.     That the public policy would be for the Friedman Defendants to be held accountable to the Plaintiffs/investors who were under the belief that the Friedman Defendants were solely representing their interests to pursue the maximum right of recovery possible.

141.     It is not an undue hardship to impose such a duty and liability on the Friedman Defendants.

142.     Defendants had a duty not to do any harm to the investors.  They did harm.  They did not carry out their function, refused to complete the task after undertaking it, rendering all of the services and the money the Plaintiffs/investors paid them useless.

143.     That the Friedman Defendants held themselves out as having particular skill and expertise or specialization in this area and should be held to a higher standard than a general practitioner.

144.     That the actions described herein involve a breach of duty and breach of fiduciary duties on the Friedman Defendants' part.

145.     In the alternative, it is alleged that the Friedman Defendants purposely favored the Rainier Defendants over the investors as they were the contact persons.

146.     That it is alleged that the Rainier Defendants had a hidden agenda different from the Plaintiffs/investors to get rid of their management

-33-

responsibilities on the property such that they cooperated in the foreclosure process to maximize their benefits.

147.    It is alleged upon information and belief that the Friedman Defendants helped facilitate the favorable outcome for the Rainier Defendants in the foreclosure process to the detriment of the Plaintiffs/investors.

148.    By reason of the above mentioned conduct of the Friedman Defendants, Plaintiffs were damaged in the loss of not obtaining the full value of their recovery in the SDP lawsuit.

149.    While purporting to represent the interests of the Plaintiffs/investors, the Friedman Defendants charged the investors over $100,000.

150.    Plaintiffs request the return of that money.

151.    Plaintiffs seek all damages allowed by law including interest and attorneys' fees and the full value of what the recovery should have been.

### COUNT IV: NEGLIGENCE
### JOHN PETEREIT, LAWRENCE FRIEDMAN AND FRIEDMAN AND FIEGLER, L.P.

152.    Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

153.    The Defendants, John Petereit, Lawrence Friedman and Friedman and Fiegler, L.P., are hereinafter referred to as the "Friedman Defendants"

Complaint

154.    That the Friedman Defendants had a duty to use reasonable care to effect the right of recovery of the investors in the SDP lawsuit.

155.    That the Friedman Defendants had a duty to render competent, reasonable legal services for the Plaintiffs/investors.

156.    For reasons described in detail above, the Friedman Defendants failed to complete their services, but charged the investors over $100,000, which is additional negligence of the Friedman Defendants.

157.    That the actions of the Friedman Defendants resulted in the loss of an opportunity to seize and maintain Plaintiffs/investors full rights of recovery against the culprits above described.

158.    That the Friedman Defendants failed to use reasonable care in representing the investors through the foreclosure.

159.    The public policy arguments for requiring the Friedman Defendants to have a duty to the Plaintiffs/investors and/or be liable set forth in Count III above are incorporated herein by reference as though fully set forth herein.

160.    By reason of the above breaches of duty, including the breaches of fiduciary duties outlined above, Plaintiffs have been injured in the loss of the full value of their right of recovery they should have had against the culpable parties in the SDP lawsuit.

Complaint

161.    By reason of the above mentioned conduct, the Friedman Defendants failed to exhibit that degree of care, experience, prudence, diligence, and skill a reasonable, reputable attorney would demonstrate and exercise under the circumstances to Plaintiffs and were therefore negligent.

162.    The Friedman Defendants' efforts described herein were below the standard of care that should have been exhibited by a reputable attorney acting as a representative of investors under the circumstances.

163.    That the Friedman Defendants held themselves out to have the experience and specialization at a high level and should therefore be held to the higher standard rather than the standard of a general practitioner as to their obligations to Plaintiffs.

164.    That the Friedman Defendants were negligent and careless in acts and omissions alleged and therefore said conduct constitutes professional negligence, including gross negligence.

165.    That the Friedman Defendants conduct was negligent as alleged throughout this Petition.

166.    The above-mentioned conduct of the Friedman Defendants is the direct and proximate cause of injury to Plaintiffs, causing them to suffer economic damage and other financial loss, including the loss of the right of recovery that was given to the lender, but which should have been secured for the investors.

-36-

Complaint

167.    That the above-mentioned conduct of the Friedman Defendants has been the direct or proximate cause of damages suffered by Plaintiffs, including the loss of the full value of the right of recovery, interest and attorneys' fees.

168.    That as a result of the above-mentioned conduct of the Friedman Defendants, Plaintiffs seek all damages allowed by law, including attorneys' fees, costs, and disgorgement of fees paid, interest, and the full value of the loss of the recovery and such other, further and different relief as the Court deems just and proper.

## COUNT V: NEGLIGENCE
## RAINIER DEFENDANTS

169.    Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

170.    The Rainier Defendants took responsibility for managing the foreclosure and the rights of recovery.

171.    As a result, the Rainier Defendants had a duty to the investors to properly represent their interest.  It took on the role as Plaintiffs' and investors' fiduciary.

172.    Defendants failed to act with the reasonable degree of skill, care, diligence, and prudence that would normally would be rendered by a party representing the interests of the investors.  This included failing to obtain the signature of the parent company of SDP before recommending this investment

-37-

Complaint

and failing to vet all the details of it and failing to appreciate the precarious position of the market SDP was in, the dynamics of the industry, the backgrounds, history and record of the participant Rainier Defendants was negligent to let themselves become duped into such an investment and to push it on Plaintiffs and the other investors.

173.　That the Rainier Defendants breached the duty of due care.

174.　That the Rainier Defendants were negligent in the manner in which they handled the foreclosure.

175.　That the conduct of the Rainier Defendants was the direct and proximate cause of injury to Plaintiffs.

176.　That Plaintiffs have suffered negligent emotional distress and anguish as a result of the conduct of the Rainier Defendants which is a further and proximate cause of injury to them, which distress was caused by Defendants' disregard of Plaintiffs' rights. (This is a claim under both California and Minnesota as Plaintiffs were residents of Minnesota at the time of the purchase of the securities and residents of California at the time of the alleged conduct herein.)

177.　By reason of the above-mentioned conduct of the Rainier Defendants, Plaintiffs seeks all damages allowed by law, including pain, suffering, and mental anguish.

Complaint

178.     That Plaintiffs were injured by the loss of his investment and by the recovery from the lawsuit that went to the lender instead of to the investors for which he seeks reimbursement.

179.     Plaintiffs seeks all monetary compensation available by law, including loss of attorney's fees and costs.

## COUNT VI: BREACH OF FIDUCIARIY DUTY
## RAINIER DEFENDANTS

180.     Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

181.     That there was a trust relationship between the Rainier Defendants and Plaintiffs.

182.     The Rainier Defendants undertook to represent the investors in a lawsuit against the tenant who breached its lease and the foreclosure and failed to use reasonable care in regards as above-described and breached their fiduciary duties as above described.

183.     That the Rainier Companies, by assuming the duties and representation of the investors occupied a fiduciary relationship with the investors.

184.     That the Rainier Defendants took advantage of the fiduciary relationship to placate the lender and protect its own interests contrary to the best interests of the investors.

-39-

185.    By reason of the above conduct of the Rainier Defendants, they breached important fiduciary duties to the investors.

186.    Some of the duties breached include breach of duty of loyalty and the requirement to deal impartially without conflict of interest, the requirement to properly control, preserve, and maintain the rights of the investors, all of which they breached.

187.    As alleged above, Plaintiffs suffered damages.

188.    Plaintiffs has also suffered extreme and severe emotional distress, all to his damage in an amount according to proof as a result of the above conduct of the Rainier Defendants.

189.    The above conduct is the direct and proximate cause of Plaintiffs' harm.

190.    By reason of the above, Plaintiffs were injured and damaged.

191.    That Plaintiffs has suffered pecuniary loss, emotional distress and anguish as a result of the Rainier Defendants' actions which were below the standard of care for fiduciaries and detrimental to the rights of Plaintiffs.

192.    By reason of the above-mentioned conduct of Defendant, Plaintiffs seek all damages allowed by law, including attorney's fees and costs and disgorgement of fees charged Plaintiffs and rescission as allowed by Texas Statute and loss of the investment and interest thereon.

-40-

Complaint

## COUNT VII: RESCISSION OR EQUITABLE RELIEF
## AS TO WAIVERS AND RELEASES
## RAINIER DFEENDANTS

193.    Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

194.    For all of the reasons set forth above, including mistake, illegality, constitutionality, undue influence, fraud, and mistake, Plaintiffs alleges that any contract of waiver or release entered into by the investors and Defendants was void as being unconscionable, procured by mistake or fraud, and unenforceable.

195.    It is not believed any such waiver was signed, but so much paperwork was signed and returned, one cannot be sure until discovery is complete. Any releases signed, it is alleged, were signed without disclosure and after wrongs occurred and therefore further self serving and deceitful.

196.    That the acts of the Defendants as set forth above, make the law of rescission applicable; otherwise, injustice will occur.

197.    That the Plaintiffs seeks all relief available under law, including the evocation of equitable relief and/or rescission as to any such releases or waivers that may have been signed without full knowledge and under circumstances of adhesion and duress.

198.    Plaintiffs seeks all such additional and extra relief as allowed by law.

-41-

199.    By reason of the above conduct of the Defendants, Plaintiffs seek all equitable remedies allowed by law including attorney's fees, costs, and reformation or rescission.

## COUNT VIII: VIOLATION OF SECURITIES ACT OF 1933 AND THE SECURITIES ACT OF 1934; AND BLUE SKY LAW RAINIER DFEENDANTS

200.    Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

201.    That the Rainier Defendants sold this investment to Plaintiffs and other investors without disclosing material facts and upon misrepresentation that the investment was safe, sound, and prudent.

202.    The Rainier Defendants knew or should have known better, but held themselves out to be capable and experienced sponsors of these investments, which they were not.

203.    The Rainier Defendants are liable as sellers or controllers under the Securities acts of 1933 and 1934 as well as Blue Sky Laws of the State of Texas, Title 19, §581 et seq, Florida Statutes §517 et seq or California Corporate Code §25401, 25403, 25500, 25501 and liable to Plaintiffs/investors for pushing a bad investment which included a sunset on the master tenancy/guarantee in 2007 by Hood and allowing an out at approximately 2015 on the leases which means it should not have been sold as a 15 year lease, but an 11 year lease.

-42-

Complaint

204.    That the Rainier Defendants continued the offer and sale of securities and obtained commitments from the investor through 2012.

205.    As such, the Statute of Limitation did not begin until 2012.

206.    Also, Plaintiffs were protected from the Statute of Limitations while under the protection of the Bankruptcy Court pursuant to 28 USC and laws tolling statutes while in bankruptcy.

207.    Also, the Statute of Limitations was tolled because Rainier continued to manifest control over the matter until 2013.

208.    Defendants, and each of them, are liable as sellers and controllers of the investment and as aiders and abetters, secondary actors, and co-conspirators joining in the plan to sell securities in violation of the Blue Sky Law and continuing in activities that interfered with the investors' right to obtain full recovery from the SDP lawsuit and which prevented them from obtaining the full benefit of their investment under the law.

209.    Pursuant to the Federal Securities Acts outlined herein and the Blue Sky Laws of this or any of the states of the Plaintiffs/investors, Defendants, and each of them, are liable for the loss of the investment or rescission of the money paid, plus interest and attorney's fees as deemed appropriate by the Court.

210.    By reason of the above mentioned conduct of the Defendants, Plaintiffs seek all damages allowed by law, including loss of their investment, loss

-43-

of their right to the recovery received in the lawsuit against the tenant, and attorney's fees and costs.

## COUNT IX:  CONVERSION
## RAINIER DEFENANTS

211.    Plaintiffs realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

212.    Plaintiffs had a right to all of the recovery in the SDP lawsuit which was taken away by the actions above described or, in the alternative, Plaintiffs and the other investors were tricked or deceived into giving up this right to the recovery.

213.    But for the actions of the Defendants, and each of them, Plaintiffs and the other investors would have received substantially more recovery in the SDP lawsuit.

214.    That the acts and omissions of the Defendants were performed with fraud, malice, and intent, to deprive Plaintiffs of an asset to serve their best interests, contrary to the law.

215.    The above action constitutes conversion.

216.    Plaintiffs seeks the full value of the loss of the property converted and/or the value of the investment had it not been converted or such other damages or remedies allowed by law.

-44-

Complaint

217.    By reason of the above-mentioned conduct of Defendant, Plaintiffs

seeks all damages allowed by law, including attorney's fees, costs, disgorgement

of fees, and rescission.

## COUNT X: DAMAGES

218.    Plaintiffs realleges and incorporates by reference the preceding

paragraphs for all purposes the same as if set forth herein verbatim.

219.    As a result of the actions of Defendants as described herein, Plaintiffs

have suffered damages including emotional distress and anguish, loss of his

investment, loss of interest on the investment, and loss of recovery from the

lawsuit against the tenant.  As a result, Plaintiffs have suffered damages and seeks

recovery for same from the Defendants, jointly and severally.

220.    Pleading further, and alternatively, if necessary, Defendants are guilty

of misconduct which was committed knowingly, intentionally, maliciously,

wantonly, fraudulently, and in reckless and callous disregard of the legitimate

rights of Plaintiffs so far as to justify the imposition of exemplary damages.

Plaintiffs seeks recovery of such exemplary damages from Defendants.

## COUNT XI:  ATTORNEY FEES

221.    Plaintiffs realleges and incorporates by reference the preceding

paragraphs for all purposes the same as if set forth herein verbatim.

-45-

Complaint

222.     Defendants' conduct as described herein and the resulting damage and loss to Plaintiffs will have necessitated Plaintiffs' to seek legal advise.  Plaintiffs therefore, entitled to recover from Defendants an additional sum to compensate Plaintiffs for a reasonable fee for such attorneys' necessary services as well as reasonable fee for any and all necessary appeals to other courts.

## **JURY DEMAND**

223.     Plaintiffs hereby respectfully demands a trial by jury.

## **PRAYER AND REQUEST FOR RELIEF**

For the foregoing reasons, Plaintiffs requests that upon final trial or other disposition of this lawsuit, Plaintiffs have and recovery judgment against Defendants jointly and severally for the following:

1.     Compensatory and special damages in excess of $75,000.00.

2.     Reasonable and necessary attorney's fees.

3.     Costs of court.

4.     Exemplary damages.

5.     Such other and further relief, at law or in equity, to which Plaintiffs are justly entitled.

-46-

Complaint

Dated: __1/9/14__

MURRIN LAW FIRM

_____
J. Owen Murrin (CA 75329)
Attorney for Plaintiffs

Mailing address:
2682 270th St.
Madison, MN 56256
(562) 342-3011

Office Address
7045 E Los Santos Dr
Long Beach, CA 90815

Complaint

1  J. Owen Murrin, State Bar No: 75329
   office address: 7045 Los Santos Dr.
2  Long Beach, California.
   Mailing address:  2682 270th St.
3  Madison, MN 56256
   (562) 342-3011
4  Fax: 562-683-2119
5  Email: jmurrin@murrinlawfirm.com

6  Attorney for Plaintiffs

7        **UNITED STATES DISTRICT COURT**
8        **CENTRAL DISTRICT OF CALIFORNIA**

9
   JOHN O. MURRIN, individually and as )   Case No.:
10 the sole member of RAINIER SDP 16, )    CV14-00234 PSG (JEM)
   LLC, and DEVONNA MURRIN, )
11 individually and as the sole member of )
12 RAINIER SDP 29, LLC )                   **SUMMONS IN A CIVIL CASE**
                                        )
13                                         )
                                        )
14            Plaintiffs, )
      -vs- )
15                                         )
16 RAINIER PROPERTIES, L.P. )
   RAINIER PROPERTY )
17 MANAGEMENT, G.P., LLC, )
   RAINIER PROPERTY )
18 MANAGEMENT, L.P., RAINIER )
19 CAPITAL MANAGEMENT, LLC, )
20 RAINIER SDP ACQUISITIONS, LLC, )
   RAINIER ASSET MANAGEMENT )
21 COMPANY LLC, JOHN PETEREIT, )
22 LAWRENCE FRIEDMAN, )
   FRIEDMAN AND FIEGLER, L.P., )
23 TIMOTHY C. NICHOLS, J. )
24 KENNETH DUNN,  RICHARD J. )
25 COLE, JR., THOMAS MOCK, )
                                        )
26            Defendants )

27

28

                            -1-
   Summons

TO:   RAINIER PROPERTIES, L.P.
      13760 Noel Road, Suite 800
      Dallas, TX 75240

      RAINIER PROPERTY MANAGEMENT, G.P., LLC
      13760 Noel Road, Suite 800
      Dallas, TX 75240

      RAINIER PROPERTY MANAGEMENT, L.P.
      13760 Noel Road, Suite 800
      Dallas, TX 75240

      RAINIER CAPITAL MANAGEMENT, LLC
      13760 Noel Road, Suite 800
      Dallas, TX 75240

      RAINIER SDP ACQUISITIONS, LLC
      13760 Noel Road, Suite 800
      Dallas, TX 75240

      RAINIER ASSET MANAGEMENT COMPANY LLC
      13760 Noel Road, Suite 800
      Dallas, TX 75240

      JOHN PETEREIT
      5301 Spring Valley Rd., Suite 200
      Dallas, TX 75254

      LAWRENCE FRIEDMAN
      5301 Spring Valley Rd., Suite 200
      Dallas, TX 75254

      FRIEDMAN AND FIEGLER, L.P.,
      5301 Spring Valley Rd., Suite 200
      Dallas, TX 75254

      TIMOTHY C. NICHOLS
      13760 Noel Road, Suite 800
      Dallas, TX 75240

-2-

Summons

J. KENNETH DUNN
RICHARD J. COLE, JR.
13760 Noel Road, Suite 800
Dallas, TX 75240

THOMAS MOCK
13760 Noel Road, Suite 800
Dallas, TX 75240

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) - or 60 days if you are the United States or a United States aency, or an officer or employee of the United States as described in Fed.R.Civ.P. 12(a)(2) or (3) - you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: J. Owen Murrin, Murrin Law Firm, 7045 Los Santos Dr., Long Beach, CA 90815 (mailing address: 2682 270th St., Madison, MN 56256).

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You must file your answer or motion with the court.

Dated: __1/10/14__          CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk

1202

-3-

Summons

UNITED ... ES DISTRICT COURT, CENTRAL DISTRIC ... ALIFORNIA
CIVIL COVER SHEET

### I. (a) PLAINTIFFS ( Check box if you are representing yourself [ ] )

JOHN O. MURRIN, individually and as the sole member of RAINIER SDP 16, LLC, and DEVONNA MURRIN, individually and as the sole member of RAINIER SDP 29, LLC

### DEFENDANTS    ( Check box if you are representing yourself [ ] )

RAINIER PROPERTIES, L.P., RAINIER PROPERTY MANAGEMENT, G.P., LLC, RAINIER PROPERTY MANAGEMENT, L.P., RAINIER CAPITAL MANAGEMENT, LLC, et al

### (b) County of Residence of First Listed Plaintiff   Los Angeles
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

### (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

J. Owen Murrin, State Bar No: 75329, office address: 7045 Los Santos Dr. Long Beach, California.  Mailing address: 2682 270th St., Madison, MN 56256

Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

### II. BASIS OF JURISDICTION (Place an X in one box only.)

[ ] 1. U.S. Government Plaintiff

[X] 3. Federal Question (U.S. Government Not a Party)

[ ] 2. U.S. Government Defendant

[ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [X] |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] |

### IV. ORIGIN (Place an X in one box only.)

[X] 1. Original Proceeding

[ ] 2. Removed from State Court

[ ] 3. Remanded from Appellate Court

[ ] 4. Reinstated or Reopened

[ ] 5. Transferred from Another District (Specify)

[ ] 6. Multi-District Litigation

### V. REQUESTED IN COMPLAINT: JURY DEMAND: [X] Yes  [ ] No  (Check "Yes" only if demanded in complaint.)

CLASS ACTION under F.R.Cv.P. 23: [ ] Yes [X] No    [X] MONEY DEMANDED IN COMPLAINT: $ 816,300

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of The 1934 Securities Act, USC 78 j(b); Negligence

### VII. NATURE OF SUIT (Place an X in one box only).

**OTHER STATUTES**
[ ] 375 False Claims Act
[ ] 400 State Reapportionment
[ ] 410 Antitrust
[ ] 430 Banks and Banking
[ ] 450 Commerce/ICC Rates/Etc.
[ ] 460 Deportation
[ ] 470 Racketeer Influenced & Corrupt Org.
[ ] 480 Consumer Credit
[ ] 490 Cable/Sat TV
[X] 850 Securities/Commodities/Exchange
[ ] 890 Other Statutory Actions
[ ] 891 Agricultural Acts
[ ] 893 Environmental Matters
[ ] 895 Freedom of Info. Act
[ ] 896 Arbitration
[ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision
[ ] 950 Constitutionality of State Statutes

**CONTRACT**
[ ] 110 Insurance
[ ] 120 Marine
[ ] 130 Miller Act
[ ] 140 Negotiable Instrument
[ ] 150 Recovery of Overpayment & Enforcement of Judgment
[ ] 151 Medicare Act
[ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.)
[ ] 153 Recovery of Overpayment of Vet. Benefits
[ ] 160 Stockholders' Suits
[ ] 190 Other Contract
[ ] 195 Contract Product Liability
[ ] 196 Franchise

**REAL PROPERTY**
[ ] 210 Land Condemnation
[ ] 220 Foreclosure
[ ] 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
[ ] 240 Torts to Land
[ ] 245 Tort Product Liability
[ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
[ ] 310 Airplane
[ ] 315 Airplane Product Liability
[ ] 320 Assault, Libel & Slander
[ ] 330 Fed. Employers' Liability
[ ] 340 Marine
[ ] 345 Marine Product Liability
[ ] 350 Motor Vehicle
[ ] 355 Motor Vehicle Product Liability
[ ] 360 Other Personal Injury
[ ] 362 Personal Injury-Med Malpratice
[ ] 365 Personal Injury-Product Liability
[ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
[ ] 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
[ ] 462 Naturalization Application
[ ] 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
[ ] 370 Other Fraud
[ ] 371 Truth in Lending
[ ] 380 Other Personal Property Damage
[ ] 385 Property Damage Product Liability

**BANKRUPTCY**
[ ] 422 Appeal 28 USC 158
[ ] 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
[ ] 440 Other Civil Rights
[ ] 441 Voting
[ ] 442 Employment
[ ] 443 Housing/Accomodations
[ ] 445 American with Disabilities-Employment
[ ] 446 American with Disabilities-Other
[ ] 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
[ ] 463 Alien Detainee
[ ] 510 Motions to Vacate Sentence
[ ] 530 General
[ ] 535 Death Penalty
**Other:**
[ ] 540 Mandamus/Other
[ ] 550 Civil Rights
[ ] 555 Prison Condition
[ ] 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
[ ] 625 Drug Related Seizure of Property 21 USC 881
[ ] 690 Other

**LABOR**
[ ] 710 Fair Labor Standards Act
[ ] 720 Labor/Mgmt. Relations
[ ] 740 Railway Labor Act
[ ] 751 Family and Medical Leave Act
[ ] 790 Other Labor Litigation
[ ] 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
[ ] 820 Copyrights
[ ] 830 Patent
[ ] 840 Trademark

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405 (g))
[ ] 864 SSID Title XVI
[ ] 865 RSI (405 (g))

**FEDERAL TAX SUITS**
[ ] 870 Taxes (U.S. Plaintiff or Defendant)
[ ] 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY:    Case Number:    CV14-00234

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD |
|---|---|---|---|
| | A PLAINTIFF?<br>Enter in the box below the name of the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br>Enter in the box below the name of the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1.  Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right.  ➡

**C.2.  Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below.  ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | Los Angeles |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   _____   DATE: 1-9-14

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |